ANTONIO SALERNI ET AL *v.* H. E. SCHEUY, CITY CLERK OF NEW BRITAIN

INGLIS, C. J., BALDWIN, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued November 4, 1953—decided January 5, 1954

*Jerome Hershey,* for the appellants (plaintiffs).

*Roman J. Lexton,* assistant corporation counsel, with whom, on the brief, was *George J. Coyle,* corporation counsel, for the appellee (defendant).

INGLIS, C. J.   In this action the plaintiffs seek a judgment declaring that the defendant, the clerk of the city of New Britain, acted illegally in refusing to certify the application of the named plaintiff to the liquor control commission for a full liquor restaurant permit.   The city clerk's refusal had been based on his finding that the premises for which the permit was sought were so zoned that their use for the sale of liquor as distinguished from beer only was prohibited.   The trial court rendered judgment for the defendant and the plaintiffs have appealed.

The following facts were found: The plaintiffs own property on Belden Street in New Britain. Ever since the adoption of the zoning ordinance of

the city in 1925, this property has been in a residence C zone. In 1934 the plaintiffs erected a building, a portion of which was designed for use as a restaurant, such use then being permitted in residence C zones. From then until December 12, 1951, they or their tenants have operated therein, under proper permits, a restaurant or tavern in which beer has been sold.

Very shortly after the plaintiffs commenced the use of the property as a restaurant, the zoning ordinance was amended so as to prohibit restaurants in residence C zones. Again, on August 21, 1935, the ordinance was further amended to prohibit the sale of beer, ale, wine and other alcoholic liquors in other than original packages in any but business B and C and industrial zones. The latter amendment contained the provision, however, that "[n]othing in this amendment shall be retroactive from date of passage and any use in operation at such time shall be governed by section 2, subsection 'g' of this ordinance." Subsections (f) and (g) of § 2 of the ordinance, printed in full in the footnote,[1] are the only provisions relating to nonconforming uses contained in the zoning ordinance.

In January, 1952, the named plaintiff prepared an application to the liquor control commission for a restaurant full liquor permit for the premises. He requested the defendant to append thereto a certifi-

---

[1] "(f) A non-conforming building, structure or use is one which would not hereafter be permitted by this Ordinance within the district in which it is located. Any non-conforming building, structure or premises which shall hereafter be caused to conform with any of the requirements of this Ordinance in its use or construction shall never thereafter be reconverted so as to be again non-conforming.

"(g) Any non-conforming use which shall have been abandoned for a continuous period exceeding one year shall not thereafter be resumed."

cate that the zoning ordinance did not prohibit the sale of alcoholic liquors in the location in question. Such a certificate is required by the liquor control commission because it is directed by § 4262 of the General Statutes to refuse a permit for the sale of liquor at a location where that use is prohibited by a zoning ordinance. The defendant refused to certify the application and returned it to the named plaintiff with the notation on it, "Beer only at this location."

From the foregoing facts it is apparent that the use made of the property by the plaintiffs over the years has been a nonconforming use. It has been a nonconforming use because a restaurant is prohibited and the sale of all liquor is forbidden in the residence C zone in which the property is located. The court concluded that to sell all alcoholic liquors in the restaurant instead of beer only would be a change of use or an increase in the nonconformity which would be violative of the ordinance and that, therefore, the defendant was justified in refusing to issue his certificate. The only question on this appeal is whether that conclusion was correct.

The zoning ordinance of the city of New Britain permits only by implication the continuance of a nonconforming use. It provides that a nonconforming use shall cease when that use has been abandoned or the use of the property has been made to conform, but it does not expressly stipulate on what conditions it shall be allowed to continue. In this particular the New Britain ordinance differs from that before the court in *State ex rel. Chatlos* v. *Rowland,* 131 Conn. 261, 265, 38 A.2d 785. In that case it was held permissible to extend the use of premises, which had been used without conformity for the sale of beer and wine, to the sale of all liquors. That result was

reached, however, only because it appeared that the ordinance authorized the extension of nonconforming uses on certain conditions and did not prohibit such a change as was proposed. Likewise, the present case is distinguishable from *Miller* v. *Zoning Commission,* 135 Conn. 405, 407, 65 A.2d 577, in which we concluded that, where a nonconforming use consisting of the sale of beer and wine had existed, the use could not be extended to the sale of other liquors. That decision was arrived at because the ordinance involved expressly prohibited such extension. Still another case is to be distinguished. It is *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 11, 37 A.2d 689. In that case we found error in the conclusion of the trial court that the existence of a nonconforming use in the sale of beer did not allow an extension of that use to include the sale of other liquors, but we did so only because there had been no evidence before the trial court as to what the provisions of the zoning ordinance with reference to nonconforming uses actually were. We, therefore, have no precedents to control the decision of the case at bar. It must be decided by the interpretation of the provisions of the New Britain ordinance arrived at in the light of general principles.

It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase. *McMahon* v. *Board of Zoning Appeals,* 140 Conn. 433, 440, 101 A.2d 284; *Miller* v. *Zoning Commission,* 135 Conn. 405, 407, 65 A.2d 577; *Piccolo* v. *West Haven,* 120 Conn. 449, 453, 181 A. 615; *Darien* v. *Webb,* 115 Conn. 581, 585, 162 A. 690. Obviously it is the purpose of § 2 (f) and (g) of the New Britain ordinance to apply this principle. The section

permits the continuance of a nonconforming use but no extension or change of it. The question before us, therefore, is whether the use of a restaurant for the sale of all kinds of liquor is a change from the use of the same restaurant for the sale of beer only.

Ordinarily a mere increase in the amount of business done in pursuance of a nonconforming use, or a change in the equipment used, does not constitute a change of the use itself. *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 162, 32 A.2d 635. There must be a change in the character of the existing use in order to bring it within the prohibition of the zoning ordinance. We said, however, in *State ex rel. Chatlos* v. *Rowland* 131 Conn. 261, 264, 38 A.2d 785: "That the sale of all alcoholic liquors in the restaurant in place of the sale of beer only involves a change of use hardly admits of question. . . ." The difference between the sale of beer only in a restaurant and the sale of all liquors therein is so great that our law requires a different permit from the liquor control commission for each of the two kinds of business. The fee charged for a permit to sell all kinds of liquor in a restaurant is much larger than for a permit to sell beer only. The reason for this must be either that the legislature believed that a restaurant selling all liquors would ordinarily do a different kind of business or that it was contemplated that it would cost more to police it.

As a matter of common knowledge it is also true that ordinarily a restaurant with a full liquor permit is quite a different sort of enterprise from a restaurant which sells only beer. It is a more ambitious establishment, partaking to at least some degree of the characteristics of a night club, rather than a quiet family eating place. The difference between the two types of restaurant is so great that the trial

court was correct in its conclusion that to carry into effect the plaintiffs' proposal to change their restaurant into one in which all kinds of liquor should be sold would be an extension and enlargement of their existing nonconforming use of the property and would create a use of the property prohibited by the zoning ordinance. It follows that the defendant could not properly certify to the liquor control commission that the use of the restaurant for the sale of all liquors was not so prohibited.

There is no error.

In this opinion the other judges concurred.