**UNITED STATES of America,**
**Plaintiff,**

v.

**CERTAIN LAND IN the CITY OF NEWARK, COUNTY OF ESSEX, STATE OF NEW JERSEY, and the Rector, Wardens and Vestrymen of Grace Church in Newark, a Religious Corporation, et al., Defendants.**

**Civ. A. No. 681–63.**

United States District Court,
D. New Jersey.

Jan. 7, 1970.

Frederick B. Lacey, U. S. Atty., by B. Dennis O'Connor, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Melville J. Berlow, Newark, N. J., for claimant, U. S. Realty & Investment Corp.

## OPINION

COOLAHAN, District Judge:

In 1963, the United States condemned a tract of land in the City of Newark, New Jersey, for its new Federal Building site, now known as 970 Broad Street. The tract was bounded on the west by Broad Street, the east by Orchard Street, the north by Walnut Street, and on the south by land owned by the claimant in this controversy, United States Realty and Investment Co. (hereinafter referred to as U. S. Realty). The United States has settled all claims arising from the condemnation proceedings with the exception of the claim made by U. S. Realty.

U. S. Realty's property runs in an east-west direction across the block in question. Two buildings were situated upon its property: one building faced Broad Street and the other building faced Orchard Street. A parking lot separated the backs of the two buildings.

Running through the center of the condemned tract from Walnut Street south to the parcel of land owned by U. S. Realty was a city street known as Ardsley Court. The Government sought to have Ardsley Court condemned but the City agreed to abandon the street, which it did. The parties have stipulated that at the time of the taking by the Federal Government Ardsley Court was a public street in the City of Newark, and that prior to its becoming a public street Ardsley Court was a "private alley" serving abutting property owners, including U. S. Realty.

None of the claimant's land was taken in the condemnation proceedings. However, Ardsley Court provided access from the rear of U. S. Realty's buildings and parking lot to Walnut Street. With the closing of Ardsley Court, the claimant's land became accessible only by the fronts of the buildings on Orchard and Broad Streets. U. S. Realty eventually tore down its building on Orchard Street, thus providing access once again to its parking lot and to the rear of its Broad Street building. U. S. Realty now claims that it is entitled to compensation in money damages for a diminution in value to its property due

to the taking of Ardsley Court by the United States.

In support of its contention, U. S. Realty refers to United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 55 L. Ed. 165 (1911), and United States v. Smith, 307 F.2d 49 (5th Cir. 1962). In both of these cases the United States condemned a portion of a claimant's property, and in each instance the government's acquisition cut off an access road leading to the claimant's remaining property. *Grizzard* and *Smith* both hold that the landowner is entitled to compensating damages for the depreciation of his remaining property due to the loss of the use of the access road. However, these cases are easily distinguished from the situation now before the Court. *Grizzard* and *Smith* are both severance cases. In each case the government took a portion of the claimant's land. The United States contended that it only need compensate the claimants for the land actually taken, and not for the resulting depreciation of claimants' remaining land caused by the government's taking. Thus, the question before the courts in both *Grizzard* and *Smith* concerned the measure of damages to be used in compensating claimants for property admittedly taken by the government. In the matter now before this Court, none of U. S. Realty's land was taken. Therefore, before this Court can consider the problems involved in measuring the claimant's alleged damages, it must first consider a more fundamental question: has there actually been a taking of "property" for which compensation must be paid.

■■ It is well settled that the quantum and method of proving just compensation is a federal question and is governed entirely by federal law. However, what constituted "property," for which compensation must be paid upon its taking by the federal government, is a question governed by the law of the state in which the property is located. United States v. 4.553 Acres of Land,

etc., 208 F.Supp. 127 (N.D.Cal. 1962); United States v. 70.39 Acres of Land, etc., 164 F.Supp. 451 (S.D.Cal. 1958). The question this Court must determine then is whether U. S. Realty's loss of access by way of Ardsley Court from the rear of its buildings to Walnut Street is a compensable loss under New Jersey law.

■ New Jersey recognizes the general proposition that a sovereign may not totally deprive a property owner of access to his property without compensation. Home Fuel Oil Co. v. Board of Adjustment, etc., 5 N.J.Super. 63, 68 A. 2d 412 (App.Div. 1949). Under state law there is recognized an "abutter's easement" which gives abutting landowners an "indubitable right of ingress to and egress from [a] highway." Good Deal of Ivy Hill, Inc. v. Newark, 56 N. J.Super. 124, 127, 151 A.2d 584, 586 (L. Div. 1959). However, "the general rule is that the property owner is not entitled to access to his land at every point between it and the highway." Mueller v. New Jersey Highway Authority, 59 N.J.Super. 583, 595, 158 A.2d 343 (App. Div. 1960). New Jersey distinguishes between a total deprivation of access and a partial deprivation of access. *See* Tubular Service Corp. v. Commissioner of the State Highway Dept., 77 N.J.Super. 556, 187 A.2d 201 (App.Div. 1963). If a claimant suffers only a partial loss of access to his property and there still remains access to other streets, then New Jersey law recognizes no compensable loss of property. *E.g.*, Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 123 A.2d 511 (1956); New Jersey v. Kendall, 107 N.J.Super. 248, 258 A.2d 33 (App.Div. 1969); Palisades Properties, Inc. v. Brady, 79 N.J.Super. 327, 191 A.2d 501 (1963). In this controversy, U. S. Realty still enjoys access to both Orchard and Broad Streets, and, under the law of this state, claimant's loss of access to Walnut Street by way of Ardsley Court is noncompensable.

Let an appropriate order be submitted.