OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 27, 2002

The Honorable Bill G. Carter
Chair, Committee on Urban Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0485

Re: Whether a municipality may enforce its own sexually oriented business ordinance when the entity to be protected is outside the corporate limits of the municipality  (RQ-0446-JC)

Dear Representative Carter:

You ask whether a municipality may enforce a sexually oriented business ordinance when a church is within 1000 feet of the business, but is outside the corporate limits of the city. We read the language of section 243.003(b) of the Local Government Code to permit such enforcement.

As you explain the background of your question, a sexually oriented business is located within the corporate limits of the City of San Antonio, "although it is located on the boundary of the city."[1] Within 1000 feet of the sexually oriented business, but in the City of Windcrest, Texas, is the Windcrest United Methodist Church. "[T]he City of San Antonio has refused to enforce its [sexually oriented business] ordinance since the Church is not located within the City of San Antonio." Request Letter, note 1, at 1. This office does not interpret city ordinances in the opinion process. See Tex. Att'y Gen. Op. No. JC-218 (2000) at 2. We cannot, therefore, comment on the City of San Antonio's interpretation of its sexually oriented business ordinance. However, to the extent that the city's interpretation may be based upon its reading of chapter 243 of the Local Government Code, we do not believe that the fact that the church is outside the corporate limits of the city necessarily forbids action on the city's part.

The authority of municipalities and counties to regulate sexually oriented businesses is governed by chapter 243 of the Local Government Code. Section 243.001 of the Local Government Code indicates: "The legislature finds that the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare." TEX. LOC. GOV'T CODE ANN. § 243.001(a) (Vernon 1999). In order to promote the public health, safety, and welfare, municipalities by ordinance and counties by commissioners court order "may adopt regulations regarding sexually oriented businesses." Id. § 243.003(a). Such regulations may include a

---

[1]Letter from Honorable Bill G. Carter, Chair, House Committee on Urban Affairs, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General, at 1 (Oct. 8, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

prohibition against such businesses being located "within a certain distance of a school, regular place of religious worship, residential neighborhood, or other specified land use the governing body of the municipality or county finds to be inconsistent with the operation of a sexually oriented business." *Id.* § 243.006(a)(2). A municipal regulation of a sexually oriented business "applies only inside the municipality's corporate limits," while a county's regulation "applies only to the parts of the county outside the corporate limits of a municipality." *Id.* § 243.003(b), (c).

In the instant case, while the Windcrest United Methodist Church is a "regular place of religious worship" within a fixed distance of which a city may prohibit a sexually oriented business from being located, *see id.* § 243.006(a)(2), it is, as you inform us, not in the City of San Antonio, *see* Request Letter, *supra* note 1, at 1. Section 243.003(b) by its terms limits the applicability of a sexually oriented business ordinance to the corporate limits of a city. It might, therefore, be argued that the City of San Antonio cannot enforce its sexually oriented business ordinance in this instance because doing so would constitute an extraterritorial application of it. We disagree with this reading of the language of section 243.003(b).

In our view, it is the sexually oriented business, which is located in San Antonio, rather than the church, to which the city would be applying its ordinance. Under the terms of section 243.003(b) the City of Windcrest's sexually oriented business ordinance cannot be applied to a business located outside its corporate limits, and Bexar County's ordinance cannot under section 243.003(c) be applied to a business located inside the corporate limits of any incorporated city in the county, such as San Antonio. But we are not persuaded that the statute bars San Antonio from enforcing its ordinance. Nothing in the language of section 243.006(a)(2) requires the "school, regular place of religious worship, residential neighborhood, or other specified land use" concerned to be within the city's corporate limits.

Arguments that municipal zoning ordinances may be applied to businesses in the relevant municipalities, even though the other affected entity is outside the city limits, have prevailed in other jurisdictions. In *Quinton v. Edison Park Development Corp.*, the New Jersey Supreme Court held that a township ordinance requiring a 100-foot buffer zone between a shopping mall and a residential area was applicable to a mall in the town in question even though the residences that directly abutted the mall area were across the town line. *See Quinton v. Edison Park Dev. Corp.*, 285 A.2d 5 (N.J. 1971). Similarly, in *Santini v. Zoning Board of Appeals*, the Connecticut Supreme Court of Errors held that a city could apply a zoning regulation prohibiting a package store from being located within 1500 feet of other premises used for liquor sales, even though those other premises were outside the city limits. *See Santini v. Zoning Bd. of Appeals*, 179 A.2d 621 (Conn. 1962). The *Santini* court's analysis of the issue is, in our view, particularly apposite here:

> The plaintiff claims that this interpretation gives to the regulation an extraterritorial effect which it cannot have under the legislation authorizing municipalities to adopt zoning regulations. The regulation does not purport to regulate property uses beyond the Bridgeport city limits. It does no more than to require the zoning authorities of Bridgeport, in the administration of the zoning

> regulations, to consider factors which affect land uses in Bridgeport, although they may arise from conditions existing beyond the city's territorial limits.

*Id.* at 622 (citation omitted). *Cf. Wende v. Bd. of Adjustment*, 27 S.W.3d 162 (Tex. App.–San Antonio 2000, pet. granted) (City of Shavano Park had standing to challenge a San Antonio Board of Adjustment decision to permit a quarry to operate in San Antonio as a nonconforming use because of extraterritorial effects of San Antonio's decision on property values in Shavano Park.)

In interpreting the language of section 243.003(b) of the Local Government Code, we read the requirement that a municipality apply its ordinance within its corporate limits to require that the sexually oriented business be within those limits, but do not read it to require that a school, church, or residential neighborhood within a prohibited distance be within those limits. Such application does not give the ordinance extraterritorial effect. Its effect is wholly within the relevant city, even if it takes account of conditions outside the city's corporate limits. Of course, this interpretation only concerns what the statute permits. We do not suggest that the statute obliges the City of San Antonio to take any particular action.

## S U M M A R Y

A city may apply a municipal ordinance to prohibit a sexually oriented business within a specified distance of a school, church, or other entity covered by section 243.006(a)(2) of the Local Government Code even though that entity is not within the corporate limits of the city in question, so long as the sexually oriented business is within those limits. Such application does not violate the statutory requirement that the ordinance apply only in the city's corporate limits.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee